1 
2 
3 
 JS-6 
4 
5 
6 
7 
8 UNITED STATES DISTRICT COURT 
9 CENTRAL DISTRICT OF CALIFORNIA 
10 
11 T CH AE L IP FE OO RP NL IE A ,O aF c tT inH gE b yS T anA dT tE h rO ouF g h C ase No. 2:23-cv-08570-SPG-PD 
12 Los Angeles County Counsel Dawyn R. ORDER GRANTING PLAINTIFF’S 
 MOTION TO REMAND [ECF NO. 32] 
13 Harrison,, 

14 Plaintiff, 

15 v. 

16 
 EXPRESS SCRIPTS, INC., at al., 

17 
18 Defendants. 
19 
20 Before the Court is Plaintiff the People of the State of California’s motion to remand 
21 to the Superior Court of California for the County of Los Angeles. (ECF No. 32). Having 
22 considered the parties’ submissions, the relevant law, the record in this case, and the 
23 arguments of counsel during the hearing on the motion, the Court GRANTS Plaintiff’s 
24 Motion and remands this Action to Los Angeles County Superior Court for all further 
25 proceedings. 
26 
27 
28 
1 I. BACKGROUND 
2 On August 30, 2023, Plaintiff the People of the State of California, acting by and 
3 through Los Angeles County Counsel Dawyn R. Harrison, filed a complaint in the Superior 
4 Court of California for the County of Los Angeles (“LASC”) against Defendants Express 
5 Scripts, Inc., et al. (ECF No. 1-1 (“Compl.”)). Plaintiff brings a single cause of action for 
6 public nuisance under California Civil Code Sections 3479 and 3480. (Id. ¶¶ 260-273). 
7 Very generally, Plaintiff alleges that Defendants engaged in knowingly unreasonable 
8 and/or unlawful conduct that substantially contributed to the opioid epidemic in California. 
9 Plaintiff claims that Defendants colluded with opioid manufacturers to increase sales by 
10 giving the manufacturers’ opioids preferred status on their formularies and refusing to 
11 place limits on their approval for use in exchange for receiving rebate and fee payments. 
12 (Id. ¶¶ 16, 27-28, 100, 269-271). Additionally, Plaintiff claims that Defendants assisted 
13 manufacturers by engaging in misleading opioid marketing efforts and operating mail order 
14 pharmacies that dispensed opioids for prescriptions written by high-volume prescribers, 
15 despite Defendants knowing that these prescriptions were not being written for medically 
16 legitimate purposes. (Id. ¶¶ 30, 46-47, 51, 53, 60, 97, 110, 220-222, 226-229, 269). 
17 On October 11, 2023, Defendants timely removed this action from LASC based on 
18 federal question jurisdiction, including federal officer jurisdiction under 28 U.S.C. 
19 § 1442(a). (ECF No. 1). On November 10, 2023, Plaintiff timely moved to remand. (ECF 
20 No. 32 (“Mot.”)). Defendants opposed on December 6, 2023. (ECF No. 35 (“Opp.”)). On 
21 December 20, 2023, Plaintiff replied. (ECF No. 37 (“Reply”)). 
22 II. LEGAL STANDARD 
23 The “[f]ederal courts are courts of limited jurisdiction.” Corral v. Select Portfolio 
24 Servicing, Inc., 878 F.3d 770, 773 (9th Cir. 2017) (internal citation omitted). Therefore, a 
25 removing party must demonstrate that an action falls within the categories of federal 
26 subject matter jurisdiction to avoid remand. See Syngenta Crop Prot., Inc. v. Henson, 537 
27 U.S. 28, 33–34 (2002). Congress has provided that the federal “district courts shall have 
28 original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of 
1 the United States.” 28 U.S.C. § 1331. “The general rule, referred to as the ‘well-pleaded 
2 complaint rule,’ is that a civil action arises under federal law for purposes of § 1331 when 
3 a federal question appears on the face of the complaint.” City of Oakland v. BP PLC, 969 
4 F.3d 895, 903 (9th Cir. 2020) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 
5 (1987)). 
6 However, another such basis for removal arises for federal officers, who are 
7 permitted to remove civil actions filed against them in state court if “the United States or 
8 any agency thereof or any officer (or any person acting under that officer)” is sued “in an 
9 official or individual capacity, for or relating to any act under color of such office . . ..” 28 
10 U.S.C. § 1442(a)(1). While § 1442 is colloquially described as “federal officer removal,” 
11 as the statute explains, it may also extend to private persons under certain circumstances. 
12 Id. 
13 To remove an action to federal court pursuant to federal officer jurisdiction under 28 
14 U.S.C. § 1442(a)(1), a private person must establish: “(a) it is a person within the meaning 
15 of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal 
16 officer’s directions, and [the] plaintiff’s claims; and (c) it can assert a colorable federal 
17 defense.” Cnty. of San Mateo v. Chevron Corp., 32 F.4th 733, 755 (9th Cir. 2022) 
18 (hereinafter “Mateo III”) (citing Riggs v. Airbus Helicopters, Inc., 939 F.3d 981, 986–87 
19 (9th Cir. 2019)). To establish a sufficient causal nexus, a private person must demonstrate 
20 “(1) that the person was ‘acting under’ a federal officer in performing some ‘act under color 
21 of federal office,’ and (2) that such action is causally connected with the plaintiff’s claims 
22 against it.” Id. (citing Goncalves ex rel. Goncalves v. Rady Child.’s Hosp. San Diego, 865 
23 F.3d 1237, 1244–50 (9th Cir. 2017)). Federal courts are generally directed to interpret 
24 § 1442 broadly in favor of removal. Goncalves, 865 F.3d at 1244. However, Defendants 
25 seeking removal “still bear the burden of proving by a preponderance of the evidence that 
26 the colorable federal defense and causal nexus requirements for removal are factually 
27 supported.” Saldana v. Glenhaven Healthcare LLC, 27 F.4th 679, 684 (9th Cir. 2022) 
28 (quoting Lake v. Ohana Mil. Cmtys., LLC, 14 F.4th 993, 1000 (9th Cir. 2021). 
1 III. DISCUSSION 
2 Plaintiff challenges Defendants’ arguments for removal on two bases. First, there is 
3 no federal question jurisdiction in this Action because Plaintiff raises a state law claim that 
4 does not require resolution of a federal question. (Mot. at 7). Second, federal officer 
5 removal does not apply because Plaintiff’s nuisance claim does not address the 
6 administration of federal health plans. (Id. at 23). 
7 A. Federal Question Jurisdiction 
8 In determining whether federal question removal is proper, the Ninth Circuit has 
9 held that “[a]n action arises under federal law only if federal law ‘creates the cause of 
10 action’ or ‘a substantial question of federal law is a necessary element.’” Coeur d’Alene 
11 Tribe v. Hawks, 933 F.3d 1052, 1055 (9th Cir. 2019) (quoting Morongo Band of Mission 
12 Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1383 (9th Cir. 1988)). Where 
13 federal law does not create the cause of action, federal question jurisdiction will lie only 
14 where “a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and 
15 (4) capable of resolution in federal court without disrupting the federal-state balance 
16 approved by Congress.” Gunn v. Minton, 568 U.S. 251, 258 (2013). “‘When a claim can 
17 be supported by alternative and independent theories—one of which is a state law theory 
18 and one of which is a federal law theory—federal question jurisdiction does not attach 
19 because federal law is not a necessary element of the claim.’” State of Nevada v. Bank of 
20 Am. Corp., 672 F.3d 661, 675 (9th Cir. 2012) (quoting Rains v. Criterion Sys., Inc., 80 F.3d 
21 339, 346 (9th Cir. 1996)). 
22 Here, Plaintiff’s cause of action arises under California law. (Compl. ¶¶ 260-273). 
23 The question in dispute is, therefore, whether Plaintiff’s claim requires resolution of a 
24 federal issue. Defendants argue that “whether the Removing Defendants owed and 
25 breached duties under the” federal Controlled Substances Act (CSA) is “necessarily raised 
26 by Plaintiff’s public nuisance claim. (Opp. at 27). Plaintiffs disagree, arguing that (1) the 
27 CSA does not provide a federal cause of action, and (2) violation of the CSA is not 
28 
1 necessary to prove their public nuisance claim under California law. (Mot. at 19). The 
2 Court here agrees with Plaintiff. 
3 Plaintiff’s complaint asserts a single cause of action for public nuisance under 
4 California Civil Code Sections 3479 and 3480. (Id. ¶¶ 260-273). In removing the case, 
5 Defendants rely on the Complaint’s references to the federal CSA. For instance, 
6 Defendants reference Plaintiff’s allegation that “…Defendants are part of the closed system 
7 and are required to comply with the provisions of the federal Controlled Substances Act 
8 (“CSA”) and its implementing regulations and California law, including the California 
9 Uniform Controlled Substances Act (CA Health and Safety Code, Division 10).” (Compl. 
10 ¶ 215). Additionally, Plaintiff alleges “[a]s dispensers of opioids, ESI and OptumRx were 
11 required to ensure that adequate safeguards were in place to dispense opioids in a safe and 
12 effective manner, provide effective controls and procedures to deter and detect theft and 
13 diversion, and comply with federal controlled substances laws, such as the requirement to 
14 maintain effective controls against diversion. See, e.g., 21 U.S.C. 801, et seq., CA Health 
15 and Safety Code, Division 10, Uniform Controlled Substances Act. ESI and OptumRx 
16 failed to meet these obligations.” (Id. ¶ 217). 
17 As an initial matter, Plaintiff is correct to note that the CSA does not provide a 
18 federal cause of action. United States v. Real Prop. & Improvements Located at 1840 
19 Embarcadero, Oakland, California, 932 F. Supp. 2d 1064, 1072 (N.D. Cal. 2013) 
20 (collecting cases on this point). Thus, if there is federal question jurisdiction in this case, 
21 then the Court must look to the four-factor test for determining whether a federal court may 
22 exercise federal question jurisdiction over a state law claim. Gunn v. Minton, 568 U.S. 
23 251, 258 (2013). Because a federal issue is not “necessarily raised” in this case, the Court 
24 declines to exercise federal question jurisdiction. 
25 A federal issue is necessarily raised when the issue is “pivotal” to the case. Nevada 
26 v. Bank of Am. Corp., 672 F.3d 661, 675 (9th Cir. 2012). Defendants argue that Plaintiff’s 
27 state law claim necessarily raises a federal question because “Plaintiff’s claim against the 
28 Removing Defendants requires it to establish that the Removing Defendants breached 
1 duties under federal law by failing to prevent diversion and report suspicious prescribers.” 
2 (ECF No. 1 at 25). Plaintiff responds that they do not have to prove a federal CSA violation 
3 to prove their public nuisance claim for two reasons. First, “California law does not require 
4 the People to prove violation of any statute or regulation to prove public nuisance.” (Mot. 
5 at 19). Second, “even to the extent that unlawful conduct may be relevant to the People’s 
6 public nuisance claim, the People still need not prove violations of the federal CSA.” Id. 
7 at 20. 
8 Here, the Court agrees with Plaintiff that even to the extent that the unlawful conduct 
9 may be relevant to the public nuisance claim, Plaintiff does not need to prove violations of 
10 the federal CSA to prevail on the public nuisance claim. This is so because California law 
11 independently requires retail pharmacies to maintain effective controls against diversion of 
12 the controlled substances they dispense, Cal. Health and Safety Code § 11106(d)(3), 
13 including by reasonably ensuring that the prescriptions they fill are issued for legitimate 
14 medical purposes during professional treatment. Cal. Health and Safety Code § 11153(a); 
15 16 Cal. Code Reg. § 1761(b). Thus, the Court agrees with Plaintiff that a federal issue is 
16 not necessarily raised because Plaintiff can prevail on its public nuisance claim by 
17 reference to duties imposed by California law alone. 
18 Additionally, even if Plaintiff relies on federal law to establish Defendants’ duty—
19 as elements of a common law public nuisance claim—it does not necessarily create a 
20 federal question. As the Supreme Court has held, “[a] complaint alleging violation of a 
21 federal statute as an element of a state cause of action, when Congress has determined that 
22 there should be no private, federal cause of action for the violation, does not state a claim 
23 “arising under the Constitution, laws, or treaties of the United States.” Merrell Dow 
24 Pharm. Inc. v. Thompson, 478 U.S. 804, 817 (1986). The Supreme Court there reasoned 
25 that Congress’s choice to provide “no federal remedy for the violation of this federal statute 
26 is tantamount to a congressional conclusion that the presence of a claimed violation of the 
27 statute as an element of a state cause of action is insufficiently ‘substantial’ to confer 
28 federal-question jurisdiction.” Id. at 814. 
1 Accordingly, the CSA is not proper grounds for the removal of this action. Unless 
2 removal was appropriate pursuant to the federal officer removal statute, remand is 
3 warranted. 
4 B. Federal Officer Removal 
5 Plaintiff next argues that its public nuisance claim in the Complaint did not address 
6 the administration of federal health plans. (Mot. 23). Because the Complaint does not 
7 address this issue, the three elements of federal officer removal are wholly inapplicable 
8 since “the People did not at the time of removal (and still do not) raise any claim addressing 
9 Defendants’ administration of federal health plans.” (Id. at 24). Second, Plaintiff argues 
10 that its post-removal Amended Complaint makes explicit that their “state-law public 
11 nuisance claim does not address Defendants’ administration of federal government health 
12 care plans.” (Id. at 27). 
13 By contrast, Defendants argue that “Express Scripts is entitled to remove this case 
14 under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because Plaintiff seeks 
15 to hold Express Scripts liable for actions it is required to perform at the direction and 
16 supervision of the federal government. Pursuant to a contract with the U.S. Department of 
17 Defense (DoD), Express Scripts PBM provides formulary services and other PBM services 
18 to the DoD health care program known as TRICARE . . . .” (ECF No. 1 at 4). Likewise, 
19 OptumRx is entitled to remove this Case based on its PBM contract with the federal 
20 Veterans Health Administration (VHA).” (Id. at 5). 
21 To remove an action to federal court pursuant to federal officer jurisdiction under 28 
22 U.S.C. § 1442(a)(1), a private person must establish: “(a) it is a person within the meaning 
23 of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal 
24 officer’s directions, and [the] plaintiff’s claims; and (c) it can assert a colorable federal 
25 defense.” Mateo III, 32 F.4th at 757. 
26 Here, the Court finds two problems with Defendants’ application of federal officer 
27 jurisdiction to this Case. First, the Ninth Circuit has found federal officer jurisdiction does 
28 not arise where a private person “enters into an arm’s length business arrangement with the 
1 federal government or supplies it with widely available commercial products or services.” 
2 Mateo III, 32 F.4th at 757. Similarly, mere “compliance with the law (or acquiescence to 
3 an order) does not amount to acting under a federal official who is giving an order or 
4 enforcing the law.” Id. This remains true “even if the regulation is highly detailed and 
5 even if the firm’s activities are highly supervised and monitored.” Id. (quoting Watson v. 
6 Philip Morris Co., Inc., 551 U.S. 142, 151 (2007)). Given these limitations, courts may 
7 not interpret federal officer jurisdiction in a way that would “expand the scope of the statute 
8 considerably, potentially bringing within its scope state-court actions filed against private 
9 firms in many highly regulated industries.” Id. 
10 Here, Defendants’ relationships with the federal government closely resemble the 
11 contractual relationships at issue in Mateo III. In Mateo III, the Ninth Circuit held that 
12 defendant energy companies were not acting under a federal officer where the plaintiffs’ 
13 claims touched upon fuel supply and lease agreements with the federal government because 
14 these were arm’s-length business arrangements, not the private performance of federal 
15 government functions. 32 F.4th at 757-8. By Defendants’ own statement in this case, 
16 “DoD is statutorily obligated to contract with private entities and establish an ‘effective, 
17 efficient, integrated pharmacy benefits program” for TRICARE members.” (Opp. at 13). 
18 Although Express Scripts is contractually obligated to “establish and maintain a nationwide 
19 retail pharmacy network” in accordance with standards set by the DoD, nothing in 
20 Defendants’ papers suggests that these contracts were anything but arm’s-length business 
21 arrangements. The fact that the contracts track “highly detailed” regulations is inapposite 
22 for the question whether federal officer removal applies. 
23 However, even if the contracts were not at arms-length, courts in the Ninth Circuit 
24 have recognized that when the federal officer removal statute is at issue, a plaintiff may 
25 expressly waive claims that would give rise to potential federal defenses. See, e.g., Fisher 
26 v. Asbestos Corp., 2014 WL 3752020 (C.D. Cal. July 30, 2014); Lockwood v. Crane Corp., 
27 2012 WL 1425157 (C.D. Cal. Apr. 25, 2012). If the plaintiff does so, its waiver is 
28 “sufficient to eviscerate [a defendant’s] grounds for removal.” Hukkanen v. Air and Liquid 
1 Systems Corporation, 2017 WL 1217075. at *2 (C.D. Cal. March 31, 2017); see also, 
2 People of the State of Calif. v. Eli Lilly and Co., No. 2:23-cv-01929-SPG-SK, 2023 WL 
3 4269750, at *7 (C.D. Cal. June 28, 2023) (“Plaintiff’s disclaimer, and later repeated 
4 waivers, negate any causal nexus that might otherwise have existed between Plaintiff’s 
5 claims and the Removing Defendants’ conduct on behalf of government officers.”). 
6 Indeed, this is the case even if the waiver is submitted post-removal. See Fisher v. Asbestos 
7 Corp. Ltd., No. 2:14-cv-02338-WGY (FEMx), 2014 WL 3752020, at *4 (C.D. Cal. Jul. 30, 
8 2014) (crediting post-removal waiver in federal officer jurisdiction case). 
9 Here, Plaintiff’s Amended Complaint includes an explicit disclaimer. (ECF No. 31 
10 ¶ 34) (“This lawsuit relates to the Defendants’ conduct in the non-federal market which 
11 resulted in the increased use, abuse, and diversion of opioids. The allegations in this 
12 Complaint do not include and specifically exclude Defendants’ provision of PBM or mail 
13 order pharmacy services pursuant to contracts with the Department of Defense, the Office 
14 of Personnel Management, the U.S. Department of Veteran Affairs, the Veterans Health 
15 Administration, or any other federal agency….). Because an explicit disclaimer is 
16 sufficient to “eviscerate” Defendants’ grounds for removal, remand here is appropriate. 
17 C. Stay of Execution 
18 Lastly, Defendants request that the Court stay execution of the remand order or 
19 mailing the remand order to the state court for at least thirty days to preserve the 
20 Defendants’ right to appeal, and then maintain the stay if the Defendants do appeal. (Opp. 
21 at 30). The Court declines this request for the following reasons. 
22 District courts possess discretionary power to stay a case. Landis v. N. Am. Co., 299 
23 U.S. 248, 254 (1936). However, in the context of a stay pending appeal, district courts 
24 apply a standard akin to the standard for a preliminary injunction. See Lair v. Bullock, 697 
25 F.3d 1200, 1203 n.2 (9th Cir. 2012). Specifically, courts consider the following: “(1) 
26 whether the stay applicant has made a strong showing that he is likely to succeed on the 
27 merits; (2) whether the applicant will be irreparable injured absent a stay; (3) whether 
28 issuance of the stay will substantially injure the other parties interested in the proceeding; 
1 || and (4) where the public interest lies.” Golden Gate Rest. Ass’n v. Cnty. of San Francisco, 
2 F.3d 1112, 1115 (9th Cir. 2008) (internal citation omitted). In the Ninth Circuit, these 
3 || factors operate like a “sliding scale,” such that “if there is a probability or strong likelihood 
4 ||of success on the merits, a relatively low standard of hardship is sufficient.” (Ud. at 1116- 
5 || 19) (internal citations omitted). By contrast, “if the balance of hardships tips sharply in 
6 || favor of the party seeking the stay, a relatively low standard of likelihood of success on the 
7 || merits is sufficient.” (/d. at 1119) (internal citations omitted). 
8 Looking at these factors, the Court concludes a stay is not warranted here. 
9 || Defendants have not made a strong showing that they are likely to succeed on the merits, 
10 || for the same reasons highlighted above. Nor have the Defendants addressed any possible 
11 hardship in their moving papers. Meanwhile, Plaintiff argues that the harm to the public 
12 |/interest from the delay is great, since the “public nuisance the People seek to abate is an 
13 |} ongoing public health crisis of unprecedented dimensions.” (Reply at 19). In light of this 
14 || and the above, the factors weigh against a stay. 
15 CONCLUSION 
16 For the foregoing reasons, Plaintiff's Motion to Remand is GRANTED. This action 
17 REMANDED to the Los Angeles County Superior Court. 
18 
19 IT IS SO ORDERED. 
20 kz 
21 ||Dated: February 28, 2024 
02 HON. SHERILYN PEACE GARNETT 
33 UNITED STATES DISTRICT JUDGE 

24 
25 
26 
27 
28